UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LUXX INTERNATIONAL, LLC, *et al.*, | Case No.: 2:23-cv-00512-MMD-DJA |
| Plaintiffs, | ORDER |
| v. | |
| PURE WATER TECHNOLOGIES, *et al.*, | |
| Defendants. | |

## I.    SUMMARY

Plaintiffs Luxx International, LLC ("Luxx") and Wayde King sued Defendants Pure Water Technologies ("PWT"), Tasty One, LLC, Michael Kaplan, and Adam Kaplan for trademark infringement and other related claims. (ECF No. 1 ("Complaint").) The Kaplans then filed counterclaims, alleging fraudulent misrepresentation against each Plaintiff. (ECF No. 16 ("Counterclaim").) On January 20, 2026, the Court entered a default judgment against Luxx and in favor of the Kaplans and voided the transfer of any and all ownership interest in PWT to Luxx.[1] (ECF No. 132.) Now before the Court is Defendants' renewed motion[2] for partial summary judgment against Plaintiff Wayde King, contending that King's claims are barred by judicial estoppel and a lack of standing. (ECF No. 133

---

[1]The Kaplans asserted a counterclaim against Luxx for fraudulent misrepresentation. The Court found that the transfer of a 15% ownership interest in PWT to Luxx under the July 14, 2017 Operating Agreement was fraudulently induced as alleged in Kaplan's counterclaim and was therefore voidable. (ECF No. 132 at 2.) The Court further ordered that attorney fees and costs be awarded against Luxx and in favor of Michael and Adam Kaplan. (*Id.*)

[2]On February 25, 2025, Defendants filed their initial motion for partial summary judgment. (ECF No. 94.) Thereafter, the Court entered default against Luxx and dismissed its claims without prejudice after Luxx failed to show good cause for its delay in retaining counsel. (ECF No. 132.) At that time, the Court did not address Defendants' amended renewed motion for partial summary judgment against Plaintiff Wayde King. (ECF No. 129.)

("Motion").) The Kaplans subsequently filed a motion for attorney's fees and costs. (ECF No. 139.) Both motions are unopposed, and the deadline for responses have passed.[3] For the reasons discussed below, the Court will grant both the motion for summary judgment and the motion for attorneys' fees.

## II.   RELEVANT BACKGROUND[4]

This case arises from trademark infringement and other related claims related to the promotion, marketing, and sales of good and services pertaining to a water filtration business.  In July 2017, Luxx, King, and the Kaplans entered into an operating agreement ("Agreement") to create and operate PWT, a business "providing goods and services in commerce pertaining to water, especially water filtration systems." (ECF No. 1 at 3, 5; *see also* ECF No. 134-1 at 2.) Under the Agreement, the Kaplans contributed capital and business expertise, while King contributed business expertise. (ECF No. 134-1 at 3, 27.) Ownership interests were allocated as follows: Michael Kaplan (35%), Adam Kaplan (15%), Wayde King (35%), and Luxx International, LLC (15%). (*Id.* at 11, 27; ECF No. 1 at 5.) The Kaplans were designated as the owners and operators of PWT (ECF No. 1 at 3) with the authority to conduct the company's business (ECF No. 134-1 at 5).

### A.   PWT's Formation and Federal Trademark Registrations

Prior to PWT's formation, the Kaplans met non-party Derrick Martin Hunt (aka "Charlie Luxx") in 2014, and Luxx worked as a salesperson for the Kaplans. (ECF No. 29 at 17-18.) The Kaplans eventually offered Luxx an ownership interest in PWT, which he later assumed in the name of "Luxx International, LLC." (*Id.* at 18.) In late 2016 or early 2017, Luxx introduced the Kaplans to Wayde King as a potential business partner. (*Id.* at 17.)

---

[3]Defendants/Counterclaimant Michael and Adam Kaplan, Defendant PWT, and Defendant Tasty One, LLC filed a notice of non-opposition to the Motion (ECF No. 141), and the Kaplans filed their notice of non-opposition to the motion for attorney's fees and costs (ECF No. 142). Plaintiff King failed to file a response to the Motion (ECF No. 133). LR 7-2(d) provides that failure to file opposition constitutes consent to granting the motion except where the motion is for summary judgment or for attorneys' fees.

[4]The following facts are undisputed unless otherwise noted.

Following its formation, PWT sought federal trademark protection for its branding. On February 6, 2018, PWT applied to register a design mark incorporating the name "WAYDE KING WATER FILTRATION," supported by King's written consent to use his name. (ECF No. 134-2.) The United States Patent and Trademark Office registered the mark on November 13, 2018, as U.S. Trademark Registration No. 5,605,139.[5] (ECF No. 134-3.)

**B.     King's Chapter 7 Bankruptcy**

On September 2, 2022, King filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Nevada. (*See* ECF No. 135-1.) In his petition, King stated that he held no interest in any intellectual property, including "patents, copyrights, trademarks, [or] trade secrets," and did not disclose any third-party claims against the defendants in this case. (*Id.* at 22-23.) King was represented by counsel in filing his petition and throughout the bankruptcy proceedings. (*Id.* at 150; ECF No. 135-2.)

On September 16, 2022, King filed amended schedules disclosing, for the first time, unspecified "[p]otential [third-party] claims for damages" against PWT and the Kaplans arising from a "2016 business agreement." (ECF No. 135-3 at 12.) However, he again reported no intellectual property interests. (*Id.* at 11.) King's debts were discharged on March 1, 2023, and the case closed on March 24, 2023. (ECF No. 135-4.)

In January 2025, during the course of the present litigation, Defendants later discovered King's Chapter 7 bankruptcy filing. (ECF No. 135-5 at 3.)

**C.     This Action and King's Undisclosed, Inconsistent Claims**

On April 6, 2023—approximately one month after his Chapter 7 bankruptcy discharge—King initiated this action. (ECF No. 1.) The Complaint asserts sixteen claims, including six claims for alleged violations of the parties' operating agreement (i.e., claims 11-16). (*Id.* at 24-34.) The remaining claims—and the focus of Defendants' Motion—are

---

[5]On July 21, 2020, PWT subsequently applied to register the mark "KING WATER FILTRATION." (ECF No. 134-4.) The mark was registered on February 23, 2021. (ECF No. 134-5.) On September 2, 2020, PWT applied to register a related design mark incorporating "KING WATER FILTRATION," which was also registered on February 23, 2021. (ECF Nos. 134-6, 134-7.)

3

for the alleged infringement of King's purported intellectual property and trademark rights (i.e., claims 1-4, 10) and for the unauthorized use of his name and likeness (i.e., claims 5-8). (*Id.* at 14-19, 23.)

As to the challenged claims, King alleges in the Complaint that he owns "valid" and "protectable" "common law rights" in his name and likeness and that Defendants used those trademark rights without authorization in connection with their "water[-]related goods and services" in violation of Nevada law. (*Id.* at 14-15.) However, Defendants point out that, as set forth above, King did not disclose any such intellectual property interests in his Chapter 7 bankruptcy petition or schedules, nor did he identify any corresponding third-party causes of action against Defendants at that time. (*See* ECF Nos. 135-1, 135-3.) Defendants contend that King's prior denial of these interests during bankruptcy is "irreconcilable" with the claims he now asserts in this litigation. (*See* ECF No. 135-5 at 4.) Defendants further asserted that King's nondisclosures bar his current claims under the doctrine of judicial estoppel. (*Id.* at 14; ECF No. 133 at 11.)

## III.    MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment in their favor as to King's intellectual property, trademark, and related claims arising from the alleged unauthorized use of his name and likeness, including: Counts I, II, III, IV, V, VI, VII, VIII, and X.[6] (*See* ECF No. 133.) Defendants advance two grounds: (1) judicial estoppel bars King from asserting claims not disclosed in his bankruptcy petition; and (2) King lacks standing to pursue his undisclosed intellectual property claims. (*Id.*) As noted above, Plaintiff failed to file a response to the Motion. Having reviewed the Motion, the Court will grant the Motion under judicial estoppel.[7]

---

[6]Claim 9 is for "unjust enrichment" and alleges that Defendants have benefited from the "unauthorized acts complained of herein." (ECF No. 1 at 22-23.) Defendants do not seek summary judgment on Plaintiff's ninth claim. (ECF No. 133 at 8.) Accordingly, the Court dismisses this claim.

[7]Because the Court determines that Defendants are entitled to summary judgment under the doctrine of judicial estoppel, it declines to address Defendants' argument that they are also entitled to summary judgment due to a lack of standing.

**A. Judicial Estoppel**

Defendants argue that Plaintiff's claims are barred by judicial estoppel because King failed to disclose them in his bankruptcy case, and any claimed mistake or inadvertence does not apply. (*See* ECF No. 133 at 13-15.) While Plaintiff does not dispute that he failed to list the claims on his bankruptcy schedule or any amended schedules, his counsel previously attributed this omission to a "mistake", contending that judicial estoppel should not apply.[8] (ECF No. 135-8.) Notwithstanding, the Court finds that, here, application of judicial estoppel is proper based on the undisputed facts presented.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (quoting 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000)). The purpose of the doctrine is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 750 (internal citations omitted); *see also Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982). Several factors typically influence whether to apply judicial estoppel in a particular case: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party successfully persuaded a court to accept the earlier position, such that acceptance of the party's inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001).

Generally, "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the

---

[8]After Defendants demanded dismissal of the undisclosed intellectual property claims, Plaintiff's counsel reported that they had notified the bankruptcy trustee of Plaintiff's lawsuit so that the trustee "[could] make a determination if the bankruptcy should be re-opened." (*See* ECF No. 135-8.)

debtor's schedules or disclosure statements." *Hamilton*, 270 F.3d at 783; *see also Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (failure to give notice of a potential cause of action in bankruptcy schedules and disclosure statements estops the debtor from later prosecuting that cause of action). This stems from bankruptcy disclosure duties, which obligate debtors to disclose all assets—including potential causes of action—whether contingent or unliquidated. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999*)*; 11 U.S.C. § 521(1) ("The debtor shall-(1) file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs"). Here, Defendants contend that the undisputed evidence shows King had sufficient knowledge of the facts giving rise to his intellectual property claims at the time of his bankruptcy filing but failed to disclose the claims. (ECF No. 133 at 15-16**.**) The Court agrees.

As Defendants note, King appears to have taken inconsistent positions. *See Hamilton*, 270 F.3d at 784. He did not list any legal or equitable intellectual property interests on his original or amended bankruptcy schedules, yet later filed suit against Defendants in April 2023. (*See* ECF No. 135-1 at 22; ECF No. 135-3 at 11.) Defendants contend that King was fully aware of his "enforceable trademark and intellectual property rights" and of the alleged infringement asserted in the Complaint when he submitted his bankruptcy schedules several months prior, but subsequently denied having knowledge of these claims.[9] (ECF No. 133 at 16-17.) Moreover, Plaintiff counsel's notice to the bankruptcy trustee (*see* ECF No. 135-8) is insufficient to escape judicial estoppel. *See Hamilton*, 270 F.3d at 784. Rather, to provide the requisite notice, King is required to have amended his disclosure statements and schedules. *See id.* The Court agrees that the first factor is satisfied, as King's position in this litigation is "clearly inconsistent" with his earlier

---

[9]Defendants further note that, although King's amended schedules disclosed "[p]otential [third-party] claims for damages" against PWT and the Kaplans arising from a "2016 business agreement," they made no mention of any potential trademark or intellectual property claims. (ECF No. 133 at 17 (citing ECF No. 135-3 at 12).)

position taken during bankruptcy proceedings. After reviewing the undisputed facts, the Court also agrees that the second and third factors are satisfied as well.

While a debtor need not know "all the facts or even the legal basis for the cause of action," a claim is considered "known"—and must be disclosed—if the debtor had sufficient information before confirmation to suggest a possible cause of action.[10] *See In re Coastal Plains*, 179 F.3d at 208 (internal citation omitted); *see also Hay v. First Interstate Bank, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (holding that, although the debtor did not know all the facts, sufficient information was known to require disclosure of the potential claims to the bankruptcy court). Upon review of the undisputed evidence—including the sequence of events by which the trademark was consented to by King, registered, and later used PWT—the Court finds that Plaintiff had sufficient knowledge of the facts giving rise to his intellectual property claims at the time his Chapter 7 bankruptcy commenced.

As courts have repeatedly emphasized, the importance of full disclosure in bankruptcy proceedings "cannot be overemphasized." *See In re Coastal Plains*, 179 F.3d at 206; *see also, e.g.*, *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 362 (3d Cir. 1996) ("[T]he importance of full and honest disclosure cannot be overstated."). However, an exception applies where a party's failure to list a claim "[is] based on inadvertence or mistake." *Ah Quin v. Cnty. of Kauai Dept. of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013). Courts have applied this exception more leniently where a debtor-plaintiff reopens their bankruptcy case to correct the omission and allows the bankruptcy court to consider the claim with complete and accurate information. *See id.* at 273. That said, courts generally construe this exception narrowly and will not hesitate to apply a "presumption of deliberate manipulation," particularly where a debtor-plaintiff fails to amend their schedules to include the claim previously omitted. *See id.* at 272; *see also,*

---

[10]In the bankruptcy context, the Ninth Circuit also takes into consideration whether the debtor possessed sufficient knowledge of facts giving rise to a potential claim during the pendency of the bankruptcy but failed to amend their schedules to disclose that claim as a contingent asset. *See Hamilton*, 270 F.3d at 784-85.

*e.g.*, *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157, 1159 (10th Cir. 2007) ("Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio,* infer deliberate manipulation."). In particular, the inquiry often turns on whether the debtor knew of the claim at the time of filing the bankruptcy schedules and whether the debtor had a motive to conceal it. *See Ah Quin*, 733 F.3d at 271. Here, the Court agrees with Defendants that there is no genuine factual dispute as to King's knowledge of his intellectual property rights and claims against Defendants at the time of his bankruptcy filing or as to his failure to amend his schedules and, accordingly, will not apply the mistake exception.

## IV.   MOTION FOR ATTORNEYS' FEES

The Court previously found that the Kaplans are entitled to attorneys' fees and costs as the prevailing parties under Section 10.16 of the Agreement.[11] (ECF No. 132 at 2.) The motion for attorneys' fees seeks $207,325.00 in fees and $17,827.09 in costs. (ECF No. 139.) The Court agrees with the Kaplans that the amount of attorneys' fees requested is reasonable. Accordingly, the Court grants the motion.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion, as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' renewed motion for partial summary judgment (ECF No. 133) is granted.

///

///

///

///

---

[11]Because the Court determines the Kaplans are entitled to attorneys' fees under the Agreement, the Court declines to address the Kaplans' argument that they are also entitled to fees under NRS § 18.010. (ECF No. 139 at 5-6.)

It is further ordered that Defendants' motion for attorneys' fees and costs (ECF No. 139) is granted.

It is further ordered that Plaintiff's remaining claim—the ninth claim for unjust enrichment—is dismissed.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 31st Day of March 2026.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE